IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

ROGER SHUFFIELD                                                    PLAINTIFF

              v.                    Civil No. 6:06-cv-06015

LARRY SANDERS, Sheriff of
Garland County, Arkansas; CAPTAIN
STEED, Garland County Jail
Administrator; DEPUTY THREADGILL;
DEPUTY SHIRLEY; DEPUTY
STRICKLAND; DEPUTY COGBURN; and
CORPORAL BRANSTETTER                                               DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

The plaintiff, Roger Shuffield, (hereinafter "Shuffield" or "Plaintiff") filed this civil rights action pursuant to 42 U.S.C. § 1983.  He proceeds *pro se* and *in forma pauperis*.

Shuffield is currently incarcerated in the Arkansas Department of Correction.  The events at issue in this lawsuit occurred while he was incarcerated at the Garland County Detention Center (GCDC).   Shuffield contends his constitutional rights were violated in two ways during his incarceration at the GCDC.  First, Shuffield contends he was denied adequate medical care.  Second, Shuffield contends excessive force was used against him.

Defendants filed a summary judgment motion (Doc. 23).  To assist Shuffield in responding to the summary judgment motion, a questionnaire was propounded (Doc. 28) by the Court. Shuffield filed a response to the questionnaire (Doc. 29) indicating he had lost all of his paperwork (Doc. 29 at page 31) including the summary judgment motion filed by the defendants.  Shuffield was sent a docket sheet and asked to identify by docket number the documents he needed to be able to respond substantively to the defendants' summary judgment motion.

-1-

Shuffield responded in letter form indicating he needed a copy of document 24 (the brief in support of the motion for summary judgment) and an additional thirty to forty-five days. Shuffield was provided a copy of document 24 and all exhibits submitted with that document. Shuffield was also given an extension of time to respond to the summary judgment motion (Doc. 30). Shuffield then filed a substantive summary judgment response (Doc. 31). The summary judgment motion is now before the undersigned for issuance of this report and recommendation.

### 1. Background

Shuffield was booked into the Garland County Detention Center (GCDC) on October 4, 2005. *Plaintiff's Response* (Doc. 31) (*hereinafter Resp.*) at ¶ 1. On October 11th, he pled guilty to a charge of possession of a firearm by certain persons. *Id.* at ¶ 2.

Captain Mel Steed is the jail administrator for the GCDC. *Resp.* at ¶ 4. Dr. Kevin Hale is a medical doctor who sees inmates at the GCDC at least once a week. *Affidavit of Mel Steed at ¶ 5 (hereinafter Steed's Affidavit).* If an inmate at the GCDC is in need of non-emergency medical care, he is supposed to complete a medical request form which is reviewed by a supervisor and then sent to Dr. Hale for review. *Id.* If it is decided an inmate needs to see the doctor, an appointment is scheduled with Dr. Hale at his regular visit. *Id.*

By affidavit Captain Steed asserts that all orders of Dr. Hale for prescription medications, referrals, or testing, are complied with by GCDC staff. *Steed's Affidavit* at ¶ 5. Moreover, Steed attached to his affidavit prescription receipts showing that two prescriptions were obtained from the Medicine Shoppe for Roger Shuffield on October 14, 2005. *Exhibit O to Steed's Affidavit.* Shuffield, however, contends he was refused medication because he did not have money in his

inmate account for the prescriptions. *Resp.* at ¶ 8.  Shuffield also contends he never received the prescription medications purchased from the Medicine Shoppe. *Resp.* at ¶ 35.

According to GCDC policy, in emergency medical situations inmates are either transported to the emergency room or an ambulance is called. *Steed's Affidavit at ¶ 5 & Exhibit A.*  Shuffield states when he experienced transient ischemic attacks (TIAs) he was not taken to the emergency room and an ambulance was not called. *Resp.* at ¶ 9.  Instead, he indicated he was ignored and told to shut up. *Id.*

Garland County has a policy in effect dealing with the issue of use of force by detention officers in the performance of their duties. *Steed's Affidavit* at ¶ 8 and *Exhibit* C.  The use of force policy provides that detention officers shall not use any force unless reasonably necessary to protect the lives and property of the public or the lives of their fellow officers. *Id.*  Once a decision is made to use force, the officers can use only that amount of force that is reasonably necessary in order to effectuate the arrest or apprehend a suspect. *Id.*

During all times relevant to Shuffield's complaint, Larry Sanders was the Sheriff of Garland County. *Steed's Affidavit* at ¶ 9.  Although Shuffield did not have any direct contact with Sheriff Sanders, Shuffield indicates he did send correspondence to the sheriff. *Resp.* at ¶ 14.  Sheriff Sanders did not respond. *Id.* at ¶ 15.

Shuffield submitted his first request for medical care on October 7, 2005. *Resp.* at ¶ 23.  He stated he was having ear aches, chronic low back pain, tooth aches, couldn't sleep, and was dizzy when standing and had blurred vision. *Id.*

Shuffield was taken to St. Joseph's Emergency room to be evaluated for a suspected stroke. *Resp.* at ¶ 24; *Exhibit M & N at page 5 to Steed's Affidavit.* Shuffield was admitted as an inpatient

and a police hold was placed on him so that he would be returned to the GCDC upon his release from St. Joseph's. *Id.*

Shuffield was admitted at approximately 1:00 a.m. and left St. Joseph's sometime around 9:45 a.m without authority and with the assistance of another person. *Steed's Affidavit* at ¶ 27 and *Exhibit N to Steed's Affidavit.* Law enforcement agencies were notified to be on the lookout for Shuffield since he had escaped. *Id.*

Shuffield was taken into custody at about 10:30 a.m. on October 8, 2005. *Exhibit N to Steed's Affidavit.* He was in a vehicle with Linda Hammond. *Id.* He was arrested and charged with escape. *Id.* Shuffield, however, denies that escape charges were ever served on him. *Resp.* at ¶ 26. Shuffield was returned to the GCDC. *Resp.* at ¶ 28.

That day, Deputy Strickland, Shirley, and Deputy Cogburn transferred Shuffield to holding 4 for medical observation since he claimed to have had a stroke. *Resp.* at ¶ 38(A). Shirley asserts by affidavit that Shuffield did not want to be moved to the holding cell for observation. *Shirley's Affidavit* at ¶ 10.

Shuffield contends Deputy Scott Shirley used excessive force against him. He was asked to describe in detail the alleged use of force. He replied:

> Approx Oct 9th I was experiencing a TIA. Officer Shirley came to the CCU and told me to get up off the floor. I told him I couldn't. At this time he kicked me in the legs and ribs several times and with a closed fist struck me in the side of the head breaking my eardrum. All the time screaming at me to get up. And that this was his jail and nobody was going to escape. Upon returning to ADC the injuries were documented by staff. These injuries are continuing with deafness and injury to my left ear. I did submit a grievance but was transported before it was heard. I wrote a statement and was interviewed by Capt Steed. And the jail lt. and I also wrote a letter to Larry Sanders about the incident.

> I have requested my inmate jacket be copied and produced as it holds much of these statements but to no avail.
>
> The request has been changed after the fact stating that I was taken to the hospital. Several other statements have been falsified and doctored by the jail.

*Resp.* at ¶ 36. Shuffield also contends they dragged him up two flights of stairs by his feet and legs. *Id.* at ¶ 38(B) & ¶ 38(F).

Shuffield submitted a medical request on October 9th. *Resp.* at ¶ 29. He stated he had contusions and abrasions on his left temple and head "some with a pronounced toe (boot) mark on the outside of [his] left shin (knee area)." *Id.* He also said he was still having symptoms of TIA's (transient ischemic attack) per the hospital. *Id.*

Shuffield indicates the contusions and abrasions were the result of Scott Shirley assaulting him. *Resp.* at ¶ 29. He indicates Captain Steed and the jail lieutenant observed the markings. *Id.*

On the medical request form, Officer Dunn noted that Shuffield had been transported to St. Joseph's Emergency Room on October 7th and while Shuffield was in the waiting room his symptoms disappeared. *Exhibit L to Steed's Affidavit at page 2.* Dunn also noted that Shuffield later walked out of the hospital. *Id.* Note was also made that they would follow up with Dr. Hale. *Id.*

Shuffield asserts that Dunn's observations are biased and erroneous. *Resp.* at ¶ 30. If the observations were true, Shuffield asserts he would not have been admitted. *Id.*

Shuffield also states he was not seen by any medical personnel for evaluation in response to this request. *Resp.* at ¶ 29 & ¶ 31. Shuffield indicates the jail only had a licensed practical nurse and not a registered nurse. *Id.* at ¶ 31. He notes the nurse cannot prescribe medication without written doctor's orders. *Id.* He maintains there was no follow-up with Dr. Hale. *Id.*

On October 10th, Shuffield submitted a medical request stating he was having drainage from his left ear, pain, blurring of vision, primarily from his right eye, and weakness and diminishing strength on his right side. *Resp.* at ¶ 32. Nurse Tommy Harmon saw Shuffield on October 10th. *Id.* at ¶ 33; *Exhibit L to Steed's Affidavit at page 3*. Harmon indicates he checked Shuffield and spoke with him about random topics. *Exhibit L to Steed's Affidavit at page 3.* Harmon noted that Shuffield appeared to be doing okay and did not recommend further medical treatment. *Id.* According to Shuffield, Harmon did not examine him, stated he didn't know what to do, and then changed the subject and discussed Shuffield's brother. *Resp.* at ¶ 33.

Shuffield was transferred to the Arkansas Department of Correction (ADC) on October 24th. *Resp.* at ¶ 3. According to defendants, Shuffield returned to the GCDC for purposes of trial on March 24, 2006. *Exhibit Q to Steed's Affidavit.* Shuffield disagrees with this statement. *Resp.* at ¶ 40. However, if he disagreed, he was asked to explain why he disagreed. *Id.* Shuffield did not explain. *Id.*

On March 27th there was an incident involving Shuffield and Deputy Threadgill. *Resp.* at ¶ 42. The use of force report completed by Threadgill describes the incident as follows:

> On 3-27-2006 at approximately 2115 hours while conducting head count on the cell block, I, Deputy Threadgill went into 2B and observed Roger Shuffield on his mat in the dayroom floor. I had previously told him to move into cell 204 prior to lockdown. I opened the door to 204B and Shuffield refused to go in stating first he had to have a bottom bunk and then that the floor was filthy and he wanted a mop first. I looked at the floor and it appeared clean to me and informed Shuffield to which he responded that he was not going to go into that cell. I got on the radio and called for assistance. As I completed the radio call Shuffield advanced on me very quickly stating why don't you put me in the cell. At that time I felt threatened and immediately pushed Shuffield away from my face, grabbed him by the shoulder area and forced him into cell B204 with no further incident. It should be noted that during the short struggle I received a small cut on my left forearm.

*Exhibit R to Steed's Affidavit.*

According to Shuffield, Threadgill had made no prior requests of him. *Resp.* at ¶ 43. Shuffield asserts that when he requested a bottom bunk and a mop Threadgill took off his glasses and as Shuffield approached the cell he hit Shuffield in the head with his fist for no reason. *Resp.* at ¶ 44, ¶ 46 & ¶ 47.

Shuffield also denies that Threadgill called for assistance. *Resp.* at ¶ 45. Shuffield maintains Threadgill did not have a radio. *Id.*

As a result of the incident, Shuffield was charged with disciplinary violations for physical intimidation, disorderly conduct and refusing to cooperate with deputies. *Resp.* at ¶ 49. He was found guilty and given thirty days lock-down with loss of privileges. *Id.* Before the disciplinary lock-down could be implemented, Shuffield was transported back to the ADC. *Id.* at ¶ 50. Shuffield returned to the ADC on March 29th. *Id.* at ¶ 41.

## 2. Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.,* 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### 3. Discussion

Defendants have now moved for summary judgment. First, defendants contend there is absolutely no evidence they refused to provide medical care to Shuffield. Second, defendants maintain that neither Shirley nor Threadgill used excessive physical force against Shuffield. Defendants note no allegations have been made that any of the other defendants used force against Shuffield. Finally, defendants contend there is no basis on which Sheriff Sanders can be held liable. I will address each argument in turn.

#### *A. Denial of Adequate Medical Care*

Defendants contend the GCDC has in place a comprehensive policy for providing medical care to all persons in custody. They maintain Shuffield's three requests for medical care in October of 2005 were evaluated appropriately and Shuffield was provided with necessary medical care. Defendants point out Shuffield was taken to the hospital on one occasion, seen by the nurse once, and prescription medications were obtained for him on another occasion. Defendants maintain there is simply no evidence of deliberate indifference on their part. Finally, defendants point out Shuffield made no requests for medical care during his brief re-incarceration at the GCDC in March of 2006.

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 1719, 140 L. Ed. 2d 1043 (1998)(citation omitted). "Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment as applied to the States by the Fourteenth Amendment." *Hartsfield v. Colburn*, ___ F.3d ___, 2007 WL 2050849, *2 (8th Cir. July 19, 2007). In this circuit it is now settled law that deliberate indifference is the appropriate standard of culpability for all claims that detention center officials have denied inmates, whether in pretrial or convicted status, adequate medical care. *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006).

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). Additionally, "'[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Jolly*, 205 F.3d at 1096 (*quoting Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)). *See also Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000)("To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk, a plaintiff must establish that the official in question did in fact know of the risk.").

-9-

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992). "A medical need is serious if it is obvious to the layperson or supported by medical evidence." *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997) (per curiam) (internal quotation and citation omitted).

"[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). In *Dulany v. Carnahan*, 132 F.3d 1234 (8th Cir. 1997), the Eighth Circuit said:

> As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976). Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation. *Id.* at 106, 97 S. Ct. at 292.

*Dulany*, 132 F.3d at 1239. *See also Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001).

In this case, Shuffield first requested medical treatment on October 7th. *Exhibit L to Steed's Affidavit at page 1.* In the area of the form where the inmate is to write the date of the problem, Shuffield wrote: "allways." *Id.* In the area of the form where he was to describe the problem he was having, he stated: "ear aches, chronic low back pain, tooth aches & can't sleep. I am dizzy when standing & get blurred vision." *Id.* In response to this request, he was taken to the hospital for evaluation and admitted as an inpatient. *Exhibits M & N to Steed's Affidavit.*

-10-

Shuffield voluntarily left the hospital apparently prior to the completion of his medical treatment. *Exhibit N to Steed's Affidavit; Resp.* at ¶ 28.   After he was again taken into police custody, he requested medical care and was placed in a cell for observation. *Resp.* at ¶ 38(A); *Exhibit L to Steed's Affidavit* at page 3.   He was examined the following day by the nurse. *Resp.* at ¶ 38(A); *Exhibit L to Steed's Affidavit* at page 3.  Although Shuffield does not believe he received appropriate treatment from the nurse, this fact does not establish deliberate indifference on the part of the named defendants. *See e.g., Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997)(prison official not involved in treatment decisions made by medical unit's staff cannot be liable for medical staff's diagnostic decisions).

Shuffield was transferred to the ADC on October 24th and did not return to the GCDC until March 24, 2006, when he was incarcerated there until March 29th. *Resp.* at ¶ 3 & ¶ 41 ; *Exhibit Q to Steed's Affidavit*.   On March 27th, he maintains excessive force was used against him by Threadgill. *Resp.* at ¶ 44 & ¶ 47.  He alleges he did not receive medical care for his injuries until he returned to the ADC. *Complaint* (Doc. 1) at pages 4 & 7.

Shuffield was asked to describe how he believed each of the defendants exhibited deliberate indifference to his serious medical needs.  With respect to Shirley, Steed, Strickland, Cogburn, and Threadgill, he states they all either stated by their actions, words, or orders that he was faking it. *Resp.* at ¶ 51.  Because they believed he was faking it, he asserts the defendants did not arrange for him to have necessary medical care.  With respect to Sheriff Sanders, Shuffield indicates he didn't even follow-up on Shuffield's letter.  Shuffield also maintains Captain Steed told his Father that "they (Garland Co.)" were not going to do anything to help him. *Id.*

I find genuine issues of fact preclude summary judgment in defendants' favor on this claim. While the court was given ample information on the GCDC medical care policy in general, the factual record is not well developed with respect to Shuffield. For example, the court does not have before it the records indicating the following: what treatment, if any, Shuffield received at St. Joseph's Hospital; who ordered him moved to a cell for medical observation; what supervisor reviewed Shuffield's requests for medical treatment; what records, if any, are kept when an inmate is placed in a cell for medical observation; what the records from the observation cell, if any exist, show regarding Shuffield's medical condition; what medical condition Dr. Hale prescribed Aspirin and Erythromycin for; whether Dr. Hale, the prescribing doctor, saw Shuffield or how Dr. Hale was made aware of Shuffield's need for these medications; whether there are any records of the prescription medication purchased at the Medicine Shoppe being dispensed to Shuffield; whether any abrasions or contusions were observed on Shuffield on October 10th or whether Shuffield exhibited any symptoms of TIA's; whether Nurse Harmon or anyone else observed any drainage from Shuffield's left ear on October 10th; and whether Shuffield was medically examined following the March 27th incident.

### *B. Excessive Force*

Shuffield contends excessive force was used against him on two separate occasions. The first time was on October 9, 2005, when Officer Scott Shirley allegedly kicked him in the legs and ribs several times and struck him on the side of his head breaking his left ear drum. *Resp.* at ¶ 36 & ¶ 38. The second time was on March 27, 2006, when Deputy Threadgill allegedly hit Shuffield in the head or face with his fist and pushed Shuffield back into his cell. *Resp.* at ¶ 44 & ¶ 47.

-12-

Shirley denies every striking or kicking Shuffield during the process of assisting him to the holding cell. To the extent any force was used, Shirley maintains it was the result of this process.

Threadgill concedes he was involved in an incident involving Shuffield in March of 2006. However, he maintains this incident was the result of Shuffield's refusal to comply with a direct order. Moreover, Threadgill contends there is no proof whatsoever that he used excessive force for the purpose of causing the unnecessary and wanton infliction of pain. Finally, both Shirley and Threadgill contend they are entitled to the defense of qualified immunity.

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). "[T]he constitutional standard applied may vary depending upon whether the victim is an arrestee, a pretrial detainee, or a convicted inmate of a penal institution." *Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001).

At the time of the alleged use of force by Shirley, Shuffield was a pretrial detainee. At the time of the alleged use of force by Threadgill, Shuffield was in convicted status. Different standards therefore apply to the two claims.

### (1). Alleged Incident involving Shirley

In *Johnson-El v. Schoemehl,* the Eighth Circuit court noted that:

[u]nlike convicted prisoners, the state has no right to punish [pretrial detainees]. *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 1871-72, 60 L. Ed. 2d 447 (1979). Their confinement conditions are analyzed under the due process clause of the Fifth and Fourteenth Amendments rather than the Eighth Amendment's "cruel and unusual punishment" standard which is used for convicted prisoners. *Id*. The injuries detainees suffer must be necessarily incident to administrative interests in safety, security and efficiency. As a pretrial detainee, Freeman's excessive-force claim is properly analyzed under the due process clause of the Fourteenth Amendment. *See Graham v.*

*Conner*, 490 U.S. 386, 395 & n. 10 (1989) (due process clause protects pretrial detainee from force amounting to punishment).

*Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989).

The courts generally analyze excessive force claims of pretrial detainees in the same way as those of arrestees. *Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001)("The evaluation of excessive-force claims brought by pre-trial detainees, although grounded in the Fifth and Fourteenth Amendments rather than the Fourth Amendment, also relies on an objective reasonableness standard."). The use of force must be necessary to some legitimate institutional interest such as safety, security, or efficiency, and the force used must not be in excess of that reasonably believed necessary to achieve those goals. *See Schoemehl*, 878 F.2d at 1048. The relevant inquiry being whether the officials behaved in a reasonable way in light of the facts and circumstances confronting them. *See e.g., Wilson v. Williams*, 83 F.3d 870, 875 (7th Cir. 1996).

In this case, Shuffield and the defendants give contradictory versions of what happened when Shuffield was moved to the holding cell for observation. *See e.g., Defts' Ex.* 2 (*Shirley's Affidavit*); *Resp.* at ¶ 38. Shirley indicates he and Cogburn "assisted" Shuffield in relocating. *Defts' Ex.* 2 at ¶ 10. Shirley, however, denies striking or kicking Shuffield during this process. *Id.*

On the other hand, Shuffield maintains Shirley kicked him numerous times and struck him in the head with such force as to burst his eardrum and to cause contusions. *Resp.* at ¶ 38(D). Shuffield indicates Strickland was present and observed the use of force. *Id.* at ¶ 39. Shuffield submitted a medical request that day stating he had contusions and abrasions on his left temple and head "some with a pronounced toe (boot) mark on the outside of [his] left shin (knee area)." *Id.* at ¶ 29. I find there are genuine issues of material fact as to whether excessive force was used against Shuffield. The

-14-

Court cannot at the summary judgment stage merely choose to believe the defendants' version of the events of October 9th and disbelieve plaintiff's version of the events.

I now turn to Shirley's argument that he is entitled to qualified immunity. "Qualified immunity is a defense available to government officials who can prove that their conduct did 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Carroll v. Pfeffer*, 262 F.3d 847, 849 (8th Cir. 2001)(*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 112 S. Ct. 534, 537, 116 L. Ed. 2d 589 (1991)(*quoting, Malley v. Briggs*, 475 U.S. 335, 343, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)). The inquiry is normally one of pure law. *J.H.H. v. O'Hara*, 878 F.2d 240 (8th Cir. 1989).

"The determination of whether a state actor is entitled to the protection of qualified immunity is a two-step process." *Washington v. Normandy Fire Protection Dist.*, 272 F.3d 522, 526 (8th Cir. 2001). First, the court must ask whether "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the [defendant's] conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). Second, the court must determine if the right was clearly established. *See Washington*, 272 F.3d at 256.

"[T]here is no question that [the] right to be free from excessive force" is clearly established. *Wilson*, 209 F.3d at 716. *See also McGruder v. Heagwood*, 197 F.3d 918 (8th Cir. 1999). Viewed in the light most favorable to Shuffield, the evidence does not show an objective need for the force that was used because Shuffield was not jeopardizing any person's safety and was not threatening the security of the facility. *Treats v. Morgan*, 308 F.3d 868, 872 (8th Cir. 2002). "The law recognizes that

-15-

order and discipline are important in running a correctional institution, but that does not authorize the arbitrary use of force, nor does it justify punitive use of force on difficult inmates not posing a real threat to other persons or raising security concerns." *Id.* (citations omitted).  *See Graham v. Conner*, 490 U.S. 386, 395 n. 10, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)(pre-trial detainee's claim properly analyzed under the due process clause of the Fourteenth Amendment).  Defendant's "arguments asserting qualified immunity rest largely on ignoring disputed facts in the record and asking this court to resolve factual disputes in [his] favor." *Wilson v. Lawrence County*, 260 F.3d 946, 951 (8th Cir. 2001).  On the record before the court, I find Shirley not entitled to qualified immunity.

### (2). Incident involving Threadgill

"[T]he Eighth Amendment's ban on cruel and unusual punishment applies to excessive-force claims brought by convicted criminals serving their sentences." *Wilson v. Spain*, 209 F.3d 713 (8th Cir. 2000)(*citing Whitley v. Albers*, 475 U.S. 312, 318-322, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986))."The Eighth Amendment protects inmates from the unnecessary and wanton infliction of pain by correctional officers regardless of whether an inmate suffers serious injury as a result." *Treats v. Morgan*, 308 F.3d 868, 872 (8th Cir. 2002)(citations omitted).  The Supreme Court has held that when "prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992).

"Whenever prison officials stand accused of using excessive physical force in violation of the Eighth Amendment, the 'core judicial inquiry' is whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jones v.*

*Shields*, 207 F.3d 491, 495 (8th Cir. 2000) (*quoting Hudson*, 503 U.S. at 6-7).   To make this determination, the court is to consider, among other things, the following factors: "the need for the application of physical force; the relationship between the need for physical force and the amount of force applied; and the extent of injury suffered by the inmate." *Jones*, 207 F.3d at 495 (citations omitted).

It has been said that "[n]ot every malevolent touch by a prison guard gives rise to a federal cause of action" because the "prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* (citations and internal quotation marks omitted). While "[s]erious or permanent injury is not required to make out an Eighth Amendment claim, [s]ome actual injury must be shown." *Id.* (citations omitted).   Additionally, the court considers "the extent of the pain inflicted in order to determine whether a constitutional deprivation has occurred." *Id.* (citations omitted).

In this case, Shuffield contends Threadgill hit him in the head or face with his fist. *Resp.* at ¶ 44 & ¶ 47.   Threadgill contends he merely pushed Shuffield away, grabbed him by the shoulders, and forced him into his cell. *Exhibit R to Steed's Affidavit.*   Shuffield was found guilty of disciplinary violations for physical intimidation, disorderly conduct, and refusing to cooperate with deputies. *Resp.* at ¶ 49.

In view of his convictions of the disciplinary infractions, I can assume for purposes of this motion that Shuffield engaged in acts of physical intimidation, disorderly conduct, and refused to

cooperate with deputies.  Given this conduct, I believe the use of some force to gain control of Shuffield was necessary.

However, I believe there are genuine issues of fact as to the amount of force used and whether the force was applied in a good faith effort to maintain or restore discipline.  Shuffield attached to his complaint a grievance form submitted by Kevin Allbright (Doc. 1 at page 6 ) and a condensed health services encounter form dated March 29, 2006,  (Doc. 1 at page 7).  The grievance indicates Threadgill charged at Shuffield struck him in the head and tackled him.  *Id.*

The health services document indicates Shuffield was examined by a nurse when he returned to the ADC on March 29th.  (Doc. 1 at page 7).  A 10-12 c.m. abrasion to the left side of Shuffield's back below his kidney is noted along with swelling and redness in the area.  *Id.*  The left upper facial area is also noted to be injured near his eye and ear.  *Id.*  It is noted his ear drum was painful on examination.  *Id.*  Puffiness on his left jaw near the temporal area is noted.  *Id.*  Note was made that his ear drum appeared to be perforated and draining.  *Id.*     If the incident occurred as Threadgill suggests it did, it does not appear that Shuffield would have exhibited the extent of injuries records on March 29th.

Similarly, I reject Threadgill's argument that he is entitled to qualified immunity.  His "arguments asserting qualified immunity rest largely on ignoring disputed facts in the record and asking this court to resolve factual disputes in [his] favor."  *Wilson v. Lawrence County*, 260 F.3d 946, 951 (8th Cir. 2001).  On the record before the court, I find Threadgill not entitled to qualified immunity.

-18-

### *C.  Liability of Sheriff Sanders*

Sheriff Sanders contends he is entitled to summary judgment on all claims because he cannot be held vicariously liable for the actions of others.  A supervisor may not be held liable for a section 1983 violation on the basis of *respondeat superior.  See Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *Ottman v. City of Independence, Mo.*, 341 F.3d 751, 761 (8th Cir. 2003).  However, "a supervisor may be held individually liable under § 1983 if he directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights." *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir.1996) (*citing Tilson v. Forrest City Police Dep't*, 28 F.3d 802, 806 (8th Cir.1994)).

A supervisor may also be held liable "the supervisor's corrective inaction constitutes deliberate indifference toward the violation." *Ottman*, 341 F.3d at 761.  "The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he] might see." *Id.*  (internal quotation marks and citation omitted).

"The standard of liability for a failure to train police officers is deliberate indifference." *Tilson v. Forrest City Police Department*, 28 F.3d 802, 807 (8th Cir. 1994)(citations omitted).  "The standard of liability for failure to supervise is 'demonstrated deliberate indifference or tacit authorization of the offensive acts.'" *Id.* (citation omitted).  Finally, a supervisory official may be liable if he created a policy or custom under which the unconstitutional practice occurred. *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).

In this case, I believe Sheriff Sanders is entitled to summary judgment.  Shuffield was asked to describe the actions taken by Sheriff Sanders.  Shuffield merely indicates Sheriff Sanders did not respond to correspondence Shuffield sent him.  *Resp.* at ¶¶ 14-15 & ¶ 36.  *Cf. Vaughn v. Greene County,* 438 F.3d 845, 851 (8th Cir. 2006)("We cannot say Sheriff Langston's practice of delegating to others such duties as reading mail and responding to communications regarding jail inmates amounts to deliberate indifference.  Moreover, there is no indication from the record Sheriff Langston had notice his policies, training procedures, or supervision 'were inadequate and likely to result in a constitutional violation'").

In this case, there is no indication Sheriff Sanders made any decisions with respect to Shuffield's medical care or was involved in any use of force against Shuffield.  Sheriff Sanders was not present during any of the incidents at issue in this lawsuit, no argument is made that he condoned the conduct, or turned a blind eye toward the conduct.  No argument is made that any failure on his part to supervise or train the defendants caused the alleged constitutional deprivation.  In short, there is no basis on which Sheriff Sanders can be held liable.

### 4. Conclusion

For the reasons stated, I  recommend that the defendants' motion for summary judgment (Doc. 23) be granted in part and denied in part.  Specifically, I recommend that the motion be granted with respect to Sheriff Larry Sanders and all claims against him be dismissed.  In all other respects, I recommend that the motion be denied.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections**

may result in waiver of the right to appeal questions of fact.  The parties are reminded that

objections must be both timely and specific to trigger de novo review by the district court.

**DATED** this 20th **day of August 2007.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE